FON ROGERS, LON ROGERS and J. L. ROGERS, a partnership trading under the firm name and style of
Rogers Bros.,

*vs.*

THE BANCOKENTUCKY COMPANY, a corporation created by and under the laws of the State of Delaware.

*New Castle, July* 14, 1931.

*Christopher L. Ward, Jr.,* of the firm of Marvel, Morford, Ward & Logan, and *Elwood Hamilton,* of the firm of Woodward, Hamilton & Hobson, of Louisville, Ky., for complainants.

*John Biggs, Jr.,* and *David R. Castleman,* of Louisville, Ky., for defendant.

THE CHANCELLOR: The defendant, a corporation created under the *General Corporation Law* of this State, is a so-called holding company and was organized principally for the purpose of investing its capital in bank stocks. It held the controlling interest in a number of banks located principally in Kentucky. Its most important holdings consisted of a controlling interest in the National Bank of Kentucky and the Louisville Trust Company, the two leading financial institutions in Louisville, Kentucky. These two institutions closed their doors on November 7, 1930, and were taken over by the respective Federal and State banking authorities. Their failure precipitated a near panic in the section of the country lying in the vicinity of Louisville and occasioned a wide-spread lack of confidence on the part of the public in banking institutions generally. The banks in which the defendant had an interest became the particular objects of public mistrust. As a consequence the defendant found its affairs suddenly thrown into a thoroughly demoralized condition which called for quick defensive action. Application was made to the Jefferson Circuit Court, Chancery Branch, in Louisville for the appointment of a receiver, and that court, on the company's consent answer, named a receiver for it. It is unnecessary to state the grounds on which the receiver was appointed. It should be said however that there was neither a charge nor an admission, in that suit, that the defendant was insolvent. The question of the defendant's insolvency, a material jurisdictional question of fact in this case, is one therefore which the answer in the Kentucky proceeding does not establish by way of admission. Insolvency must be made out in this jurisdiction by independent proof, unaided by any adjudication or admission of its existence.

In order to support a receivership bill under *Section* 3883 of our *Code,* the insolvency charged must be shown to

have existed at the time the bill was filed. *Manning v. Middle States Oil Corp.*, 15 *Del. Ch.* 321, 137 *A.* 79, 81; *Freeman v. Hare & Chase,* 15 *Del. Ch.* 321, 142 *A.* 793; *Kenny v. Allerton Corp.*, 17 *Del. Ch.* 219, 151 *A.* 257. This rule is founded on the generally accepted conception that a right of action speaks as of the time when it is alleged. When it is remembered that if a bill for a receiver is filed under the statute, it takes precedence over a bill for the same purpose subsequently filed in any county of the State (*American Foundry Co. v. Premier Motor Corp.*, 13 *Del. Ch.* 286, 120 *A.* 485), the salutary nature of the rule which requires the bill to be supported by proof of facts existing at the time of its filing is apparent, for if such were not the rule the practice would be encouraged of filing class bills for receiver as cautionary measures for the purpose of squatting upon the future, so to speak, to the exclusion from the remedy, except as intervenors, of all other members of the numerous class equally entitled to sue. I do not mean to insinuate that the present bill was filed for any such purpose. There is not the slightest ground for any such insinuation. The observation was made for the purpose of fortifying the reasonableness of the rule that insolvency must be shown at the time the bill is filed, by showing that, in addition to its technical support, it is sustained by salutary considerations of policy in cases of the instant sort.

In passing upon the fact of insolvency, the fact of the appointment of a receiver in the State of Kentucky is of no relevancy, for the receivership there was not based on insolvency. In *Manning v. Middle States Oil Corp., supra,* is found this language:

"Unless the fact of insolvency is either admitted in the foreign proceedings or judicially found upon evidence in a suit of which the finding court has jurisdiction, this court should, in determining whether insolvency is shown, view the case entirely aside from what the foreign court has seen fit to do and decline to allow the existence of the foreign receivership to have any prejudicial influence in the judicial act of forming a judgment upon the evidence."

Our statute confers the jurisdiction to appoint a receiver only when insolvency exists. It does not make the existence of a receivership elsewhere a ground for appointment here. Hence it is that when this court, as in *Stone v. Jewett, Bigelow & Brooks Coal Co.,* 14 *Del. Ch.* 256, 125 *A.* 340, indicated that the appointment of a receiver elsewhere would as a general rule prompt an exercise of the discretion here in favor of the appointment, the qualification was added that the necessary jurisdictional facts, including of course insolvency, must be shown to exist.

Have the complainants shown a condition of insolvency? The sort of insolvency charged by the bill is an inability of the defendant "to pay its debts and obligations as they mature in the ordinary and usual course of business." The asset and liability condition of the company therefore needs to be examined no further than to answer the question of whether or not the defendant was in a position to take care of its debts maturing in the ordinary and usual course of business. The time is not available to me to discuss in detail the liabilities which this company had on December 8, 1930, when the bill was filed, and to point out how its asset resources were such that it could meet or satisfactorily arrange for its then existing debts, as indeed it has since done. It was able either to pay in cash or satisfy its creditors by ample security.

This was true with respect to all debts unless a liability for assessment as stockholder in the insolvent National Bank of Kentucky (under the Federal act) and as stockholder in the insolvent Louisville Trust Company (under the Kentucky act), is to be regarded as a debt matured or shortly maturing at the time the bill was filed. If this liability was a debt due or falling due, then the defendant appears to have been insolvent.

When a national banking institution becomes insolvent each of its stockholders is liable to the amount of his stock therein for all its debts *USCA, tit.* 12 §§ 63, 64. While the

liability exists, yet it does not accrue nor is it collectible until an assessment has been made by the Comptroller of the Currency and a time fixed by him for payment. *Aldrich v. Yates,* (*C. C.*) 95 *F.* 78; *Aldrich v. Skinner,* (*C. C.*) 98 *F.* 375; *Deweese v. Smith,* (*C. C. A.*) 106 *F.* 438, 66 *L. R. A.* 971, affirmed 187 *U. S.* 637, 23 *S. Ct.* 845, 47 *L. Ed.* 344. Judge Bradford, in referring to a stockholder's double liability under the National Bank Act, observed in *Rankin v. Miller,* (*D. C.*) 207 *F.* 602, 610, that "there is a broad distinction between the maturing of a liability as a prerequisite to the successful prosecution of an action for its enforcement, and the attaching of the liability upon the declaration of insolvency or the acquisition of the stock." This distinction is of importance in the present case, for while the double liability as a stockholder in an insolvent national bank may be conceded to have attached, the absence, at the time the bill was filed, of an assessment by the comptroller and the fixing by him of a day for payment, prevented the liability from accruing. Granting it to have been a debt, it was not a debt that was either then demanding payment or for which a payment date had yet been fixed.

The liability of the defendant as a stockholder in the Louisville Trust Company, a Kentucky corporation, was under the Kentucky law also a liability not due then or at any definite time, for there is no contention that any judicial determination had found an assessment to be necessary. *Denny, State Banking Com'r., v. Kennedy,* 229 *Ky.* 178, 16 *S. W.* (2d) 1030.

Inasmuch as no assessments had been made and due dates had not been fixed for the payment of the defendant's liability as a stockholder in the national bank and in the trust company when this bill was filed, I decline to consider the liability as one that is to be taken into account in determining whether the defendant was then able to pay its debts and obligations as they mature in the ordinary and usual course of business. If the assessments

had been made and a day of payment fixed which was shortly to arrive, the case might appear in a different light.

Laying out of calculation then the defendant's liability as a stockholder in the national and state banking institutions, the complainant's case rests on the defendant's inability to meet its other obligations when the bill was filed. As to these, I have already stated that they were not such as the defendant was unable to take care of either by payment or by arrangements entirely satisfactory to the creditors. Indeed, it would appear that if necessary the defendant could probably have liquidated them all by cash in hand or easily procurable.

The bill will be dismissed.